Good morning. I'd like to reserve two minutes for the final case. You're going to have to keep your voice up. Good morning. If it pleases the Court, I am Kim Sherman, representing the appellant Lexington McIntyre, and at my counsel table is co-counsel Mary Ann Dugan. We are here to ask the Court to overturn the District Court's dismissal. It should be overturned as an error of law. The District Court improperly accepted Eugene School District's assertion that provision of accommodations and testing is equivalent to specially designed instruction under the IDEA when it determined that a child, Lexington McIntyre, who was never protected by the IDEA in her 13 years of enrollment in Eugene School District Okay, but we have to back up just a little bit, okay? Let me see if I can, your time is short, so I want to, I have a few questions for you. So your action is under 405. 504. 504, I'm sorry. 504, correct? Correct. And you're seeking damages. Correct. But is the relief you're seeking, is it for deprivation of a free and appropriate publication, education? Your Honor, that's the crux of the question, because Section 504 defines free appropriate public education differently than the IDEA. I understand, but let's focus on what are the, what's, you're seeking damages, okay? And what are you seeking, why are you seeking damages? For discrimination against Ms. McIntyre in the provision of her education, not for IDEA violations of not providing specially designed instruction, which is different than the discrimination claims under 504. Okay, you said discrimination in her education. Correct. So what is the, take that to the next step. So discrimination in education, that's a broad statement. Correct. The bright line rule that we would like this Court to adopt is that a child who is not eligible under the IDEA is not required to exhaust the provisions of the IDEA. Bottom line. So that question should be asked before the FRI 2 questions of Graviman, where the FRI Court said you have to ask these two questions about children who are supported by the IDEA and also supported by 504. Those two questions are can this child bring this case somewhere else and can an adult in that school system bring the same case. Before you even get to that question, we assert that the first question should be, is this child even covered under the IDEA? If the answer is no, then we should never get to the Graviman. No, but that doesn't make it, as I understand FRI, that doesn't make any difference. Say again, I'm sorry. So you have to look at, you're seeking damages for denial of something, right? Correct. And so what you're saying is you're seeking damages because they didn't provide an equal education, right? We're seeking damages because the school district denied accommodations that would have allowed Ms. McIntyre to fully access the education provided to her non-disabled peers. The FRI Court even agrees with this interpretation when it said at page 754, a school's conduct toward a disabled child, say some refusal to make an accommodation, might injure her in ways unrelated to a fate which are addressed in statutes other than the IDEA. Okay. Pardon? All right. Let me take this at another little different direction. So under the regulations, IDEA regulations, I believe, it provides that special education means to adapt the content methodology or delivery of instruction. Is that right? That's 39 CFR section 300.39. And it further defines children who are disabled under the IDEA as requiring specially designed instruction. And it takes out of that eligibility any child who requires only related service. The FRI Court went on to say accommodations are part of that. So let me ask you this. Do you allege in your complaint that she failed to receive education that would adapt the content, methodology, or delivery of instruction? No, Your Honor. The education she received was inferior, but it was the same level of education. For instance, the French class that she was required to accept as her accommodation to avoid Mr. Stasek was inferior to that of the French class provided to all of her non-disabled peers. That's where 504 says you can't do that. You can't provide an education to a child with a disability that is inferior to your non-disabled peers. That's why we're in 504. The education that she received was independent study, but it was not specially designed instruction that adapted the curriculum, instruction, or methodology of the French language instruction. It was just less. What did the 504 plan provide for your client? It provided for extended time in testing and a quiet space for testing. Those accommodations are available to any person taking an employment exam as an adult, entry into the police academy. All of those accommodations are provided beyond K-12 school. It was more than that, though, wasn't it? It was preferred seating in the class, at the head of the class. It was excused absences. It was more than just what you related. There were quite a few more accommodations. There were quite a few accommodations, but the two that were routinely denied to Ms. McIntyre were the extended time for testing and a quiet space for testing. Did she need that in order to have meaningful access to education? That is correct, Your Honor. That implicates developing a faith, doesn't it? It does not. It implicates providing a free. So the 504 talks about an appropriate education that is free to parents, which is where the vernacular muddies it with the IDEA, free appropriate public education. Under IDEA, free appropriate public education means an adapted curriculum, instruction, or methodology that provides specially designed instruction to a disabled child to allow her to make progress in the general education curriculum. Under 504, an appropriate education is one that is equivalent to the non-disabled peers and provides access, like accommodations, access to that education. And it has to be free to the parents. Because we live in these acronyms in special education, we have FAPE and FAPE on both sides of these two different statutes that start to make people believe it's the same thing, but they're not the same thing. Under 504, if you're not receiving specially designed instruction, you are not a child served by IDEA. And IDEA explicitly says if the child doesn't require specially designed instruction, they are not eligible for IDEA. I just have one other question for you. We have an opinion that came out, Ninth Circuit has an opinion that came out before FRI, pain, where we sort of grappled with this whole area. Do you think that pain and FRI are consistent, or are they a little bit inconsistent? I think that pain and FRI both consistently state the same thing, that a child served by IDEA and 504 has to look at, the court would look at the relief sought for the child in a case to determine if it belongs in IDEA and therefore has to be exhausted or belongs in 504 and does not. This child was never served by IDEA, so she is not part of that decision. She's the next step in that rulemaking, which is that a child never served by IDEA only by 504 should not be required to exhaust remedies under IDEA. If I may save the remainder of my time. Yes.  Your Honors, may it please the Court, Rebecca Jacobson on behalf of Defendant Appellee Eugene. Could I ask you to keep your voice up, please? Yes, Your Honor. I'm having a hard time hearing today. I don't know why. Is that better? Yes. Okay. Thank you, Your Honor. To follow up on the argument from Ms. Sherman, the district argues that the district court appropriately held that the primary question here using the FRI test is whether the government and plaintiff's complaint sought redress for the school district's failure to provide a free appropriate public education. The Supreme Court could have made a distinction between 504 FAPE and IDEA FAPE. It did not. What the Supreme Court says that we must focus on under FRI is that whether the government and the plaintiff's suit is something other than the denial of IDEA's core guarantee of FAPE and the adequacy of the special education services. To your questions about whether or not the accommodations of Lexington McIntyre were specific or something that could have been provided outside of a school setting, the answer is no. These are very specific accommodations that allowed Ms. McIntyre to access her education. And plaintiff's claims are very interrelated to those accommodations. An adult can, in certain educational testing situations, get accommodations. That's correct, Your Honor. A bar examination, I think, can get accommodations for testing. That's correct, Your Honor. Under 504. Yes. What I would indicate to you is I believe that the Eighth Circuit addressed this issue in the Nelson v. Charles City Community School District case, indicating that type of review of FRI's two tests required a higher level of generality than what FRI is indicating district courts should use. And that is what Judge Russo indicated in her findings and recommendations, that you're not supposed to extrapolate this further than. So as I understand the complaint, she's seeking damages for allegedly a violation of 504 for failure to implement the 504 plan. Yes, Your Honor. Okay. So under FRI, we have to ask, well, is she really seeking, is the Grab Room a complaint really she's seeking damages for deprivation or failure to provide a FAPE, right? Correct. Okay. So what are the allegations in the complaint that show that that's really what she's up to? Yes, Your Honor. In the paragraphs 43 and 50, which are about. . . Hold on, hold on. I've got it right here. Hold on. Okay. Forty-three. And 50. Okay. The legal foundation of both claims as pled is that the district failed to make reasonable accommodations that plaintiff needed as a K-12 student. And as a result, she was denied an equal education with non-disabled students. And then, related to the ADA, at paragraph 43, the district failed to provide reasonable accommodations to ensure she was not educated with non-disabled students, allowed to interact with non-disabled peers, and enjoyed the same benefits of the French immersion in international high school programs that her non-disabled peers enjoyed. Okay. So how does that relate to the definition of a FAPE, or the providing. . . You know, I read earlier, under 34 CFR section 300.39, special education means to adapt the content methodology or delivery of instruction. So how does paragraph 43 encompass that definition? Your Honor, Frey indicates that you must look at the entire pleading, which plaintiff is the master of. And so I would also point you to the number of references to those specific accommodations in the complaint. For example, paragraph 16 discusses the failure to implement the 504 by the French immersion teacher. Paragraph 17 and 19 discuss the deficiency of this independent study option, as does paragraph 19 and 21. So taken together, they are indicating that this specialized instruction provided for this student who is on a 504 is deficient and resulted in discrimination against plaintiff. So let me ask you this. What did the 504 require the French teacher to do? The 504 plan required that the French teacher provide additional time for testing, testing in a separate place, minimizing the assignments to the core information that's needed, in addition to favorable seating, preferred seating at the front of the class. Which he didn't do. That's right. He was deficient in implementing the 504 plan. So are you saying then that it's petitioner's responsibility to develop or ask for the development of a FAPE? Your Honor, what the school district is indicating is that if there was a deficiency in doing so, which the district acknowledged and addressed at the time, and plaintiffs still felt that that remedy was inadequate, they should have used the due process procedures available under Oregon and federal law to appeal that at the time. The idea here is the prompt resolution of the complaint instead of a year or two after the student graduates from high school. But there was no FAPE, right? There was not. I'm asking you. Am I right? There wasn't a FAPE developed? Your Honor, at the time that the student was in Mr. Stasek's class, he was failing to implement several of the provisions and, therefore, FAPE was not provided. And so why wouldn't the school district bear some responsibility if they saw this problem and saying, hey, yeah, I think we need a FAPE here? You didn't do that, did you? You're correct, Your Honor, in that there was a violation of the 504 plan at the time in 2015. The school district remedied that by taking corrective action regarding Mr. Stasek and then allowing additional accommodations to Ms. McIntyre to allow her to receive FAPE. And that's that independent study option. Let me ask you this. This case is up before us on a motion to dismiss? Yes, Your Honor. So on the basis that she didn't exhaust administrative remedies? Yes, Your Honor, in that she-  Yes, Your Honor. Which means that you raise it first and then you can file a motion for judgment on the pleadings or you can file a motion for summary judgment. There was a second and independent basis for the dismissal, and that was that the statute of limitations had rent on this claim. That was tied to whether or not this truly was a claim that was under the IEDEA, correct? Yes, Your Honor. And even if it was a 504, just a straight Rehabilitation Act claim, the conduct, some of that conduct did fall within the two-year statute of limitations. Your Honor, I would disagree with that. The claim was filed in May of 2018. The primary conduct that we're talking about here occurred in 2015 and therefore would fall outside the statute of limitations. Are you sure about that? Your Honor, yes, I am fairly certain of that. The primary- Well, don't you have to look at the allegations in the complaint? Yes, Your Honor. To determine whether or not it's obvious that the statute of limitations is run? Yes, and the conduct that there was conduct related to the graduation proceedings that fell within the statute of limitations. There was the testing accommodations that occurred in her senior year that would have fallen within the statute of limitations. In the statute of limitations, right? Yes. So why wouldn't that be enough to get around the statute of limitations, assuming that the minority provision applies? Well, I would have two responses to that, Your Honor. The first is that the Supreme Court requires the court, the district court, to look at the gravamen of the complaint. So if plaintiff had taken Judge Aiken up on her offer to allow her to amend the complaint to conform to the findings and recommendations instead of plaintiff standing on her amended complaint, then she could have tailored the complaint to just those allegations within the statute of limitations to make it a simple discrimination complaint, and that's not what the gravamen of the complaint is. You have to take the entire complaint as a whole. Okay. Thank you. Thank you, Your Honors. Before I start in my rebuttal, I would just like to say again the bright line rule is if a child is not served by the IDEA, they are not beholden to the exhaustion requirements of the IDEA. I don't know that that's quite correct. You have to read Frye very carefully. If the child had sought protections under the IDEA or was served under the IDEA, Frye, the child in Frye, was served by both IDEA and 504. Payne was served by IDEA and 504. Rob, which was overturned by Payne, served by IDEA and 504. Ms. McIntyre never sought evaluation for IDEA, never sought eligibility, was not served by an IEP, which is the defining piece of the IDEA legislation. If she's not an IDEA child, she shouldn't be ---- a special education program to a child without having exhausted your administrative remedies under IDEA. Even if during the time of the kid's education, the child's education, she never sought an IEP under the IDEA. Correct. And we never sought that protection. We only sought the protection of Section 504 and the ADA to provide accommodations to her education, to her access to the education. And once those accommodations were denied and she was required to do this independent study that was inferior to her peers, we sought redress on that for the emotional harms and distress of that whole 11th and 12th grade situation. Okay. We ask that the court overturn the dismissal and remand to district court. Thank you. Thank you, counsel. The matter is submitted.
judges: Fernandez, Paez, Burgess